Nott, J.,
delivered the opinion of the court:
At the last term of the court it was found (23 C. Cls. R., 431) that the value of the brig Hiram, “at the time of capture, would have been in an American port $5,000,” but that she was bought in at a public sale, which took place under the decree of condemnation, “by her master, for the benefit of her owners, for $640, which, with exchange and commissions, made the cost of her purchase to her American owners $800.” The court was of the opinion that the indemnity for which France was liable “ must be restricted to the money which was paid to recover the vessel, plus the freight earnings of the voyage and a reasonable sum in the nature of demurrage for the interval between capture and sale.”,,
These latter amounts brought the indemnity for which the Government of France was deemed to be liable up to the sum of $3,200; and as there were eight owners of the vessel, entitled each to $400.
But it was likewise found that five of the eight owners of the vessel had been insured, and that they had received from their insurers, as for a total loss, not . $2,000 in the aggregate, but $3,188. In other words, the insurers had paid them an amount materially greater than that which the court deemed the limit of the liability of France. As to these insurers, the court held that they were entitled to no greater indemnity than the assured would have been entitled to if no insurance had been effected.
Since the conclusion of the court was announced, the repre *33 sentative of one of the underwriters has moved for a rehearing; and the question of liability has been argued, it being maintained on the part of the claimant that the sale of the vessel under the decree of condemnation vested the title in the purchaser, no matter who he might have been; that the price paid at a forced sale was not evidence of value; that proceedi ngs subsequent to condemnation can not affect the rights of the owners as they existed at the date of the decree; and that, on seizure and abandonment, the insurers were bound to pay the assured, there being after condemnation no spes recuper-cmdi.
The facts, so far as they are disclosed, are that this vessel, captured on the 9th May and condemned on the 5th June, 1798, was in a few days bought in for the owners at public sale under the decree by her master, and brought back to this country. The master did not return to this country until he brought back the vessel; and from the date of certain affidavits made by him at Derby, Conn., it appears that this must have been before the 19bh July, 1798. No abandonment of the vessel is shown to have been made by the owners, and certainly, if any was made, it was not until the vessel had returned to the possession of the master. The insurance was not paid until April, 1799. Before it was paid the Hiram had been again insured in the same insurance office, had again sailed, and had again been captured.
Upon these facts the court has reached the following conclusions :
(1) In these'cases, which rest upon the just and equitable principles of international law and are not matters of strict legal right, the court is of the opinion that the liability of neither France nor the United States is to be measured by the technical rules of municipal law. No government ever consents to pay punitive damages. The actual loss caused to a vessel and her cargo is all that a claimant was entitled to indemnity for, and the transactions of parties between themselves as owners; insurers, charterers, freighters, can not be resorted to for the purpose of swelling the indemnity to an amount greater than the loss. Moreover, it is by no means clear that these owners could have maintained an action for total loss against the insurers. In Gracie v. The New York Insurance *34 Company (8 Johns. R., 245), the Supreme Court of New York said:
“In MoMasters v. Shoolbred (3 Esp. N. P., 237), there was a capture and repurchase, and no abandonment; and Lord Kenyon ruled that the plaintiff was entitled to his indemnity, as in the case of a ransom, which, was the sum paid for the repurchase of the ship and the expenses. * * * So it was said by Lord Mansfield, in the case of Goss v. Withers, that if, after condemnation, the owner recovers the ship captured, but has paid salvage, or been at any expense in getting her bach, the insurer must bear the loss actually sustained. Whether the amount of the ransom, or salvage, or repurchase in these cases falls short or goes beyond the prime cost of the subject does not alter the principle nor affect the question of abandonment. The assured receives no more than his indemnity’by being reimbursed the sum he has paid. * * * He is not to make a profit of the insurance. He is not to be paid for the whole subject while he retains part, or is supposed to be capable of recovering part.”
(2) Though it is true that a person suing for the tortious taking of his property is not restricted to the diminished price by which it passed to another person at a forced sale, yet, nevertheless, in the present case the- French authorities permitted the master (who represented all parties, owners and insurers) to buy in the vessel and take her out of port and return with her to this country. France may then say that if the owners had the loss of the sale, they also had the profit of the purchase; and that if the one was caused the other was allowed; and that in computation of the losses as distinct from punitive damages, the value of the veséel as between France and the owners must be the price at which the one sold and the other purchased.
(3) The court is also of the opinion that if Congress should be willing to lay down a different rule for the measure of the damages in this and like cases, the facts are sufficiently stated to present the question for legislative action. In these cases no final judgment judicially determining the rights of the parties is rendered. The action of the court is merely an investigation of facts on the one hand and.an expression of opinion on the other. In construing our powers and duties under the French Spoliation Act, 1885, the court expressly said in Cush-ing’s Case (22 C. Cls. R., 1) of these claims:
“ But we can not enter judgment; on the contrary, after the hearing we may only report to the Congress such conclusions *35 of fact and law as in our opinion may affect the liability of the United States for these claims (sections 3 and 6), and this report is binding on neither the claimant nor the Congress (section 6).”
The order of the court is that the motion for a rehearing be overruled.
Davis, J., sat at the hearing of this motion, but was prevented from taking part in the decision by unavoidable absence.